**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
JENNY J.  MERCADO,

                       Plaintiff,

           - against -

PLAYA REALTY CORPORATION, et al.,

                   Defendants.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 03-3427 (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

Defendants Golden National Mortgage Banking Corporation ("Golden"), Playa Realty Corporation ("Playa"), Litton Loan Servicing, L.P. ("Litton"), and Chase Manhattan Bank ("Chase") all seek summary judgment against plaintiff Jenny Mercado ("Mercado").  Docket Entry ("DE") 23 (motion by Golden), DE 30 (cross-motion by Playa, Litton, and Chase).  More precisely, Golden seeks "an order pursuant to Rules 12(b)(1), 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure, dismissing the second and third claims in the complaint" and relies on evidence outside the pleadings.  *See* DE 23.  Playa, Litton, and Chase, in their joint submissions, similarly seek both summary judgment and dismissal on the basis of evidence outside the pleadings, *see* DE 30, and Mercado likewise relies on evidence outside the pleadings in opposing the motions.  *See* DE 35, DE 51, DE 52.  I therefore treat the motions as seeking summary judgment under Rule 56.  *See, e.g., Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)). For the reasons set forth below I grant each defendant's motion.  I also deny the application, made in one of Mercado's submissions, for leave to file an amended complaint alleging a cause of action for breach of contract.

I.    Background

A.    The Parties' Submissions

The parties have submitted, and I have reviewed, a number of materials in connection with the instant motions.  For ease of reference I list them here along with the abbreviations to be used in referring to them:

| DE # | Abbreviation | Description |
|------|--------------|-------------|
| 23 | "Golden Notice" | Notice of Motion to Dismiss the Complaint |
| 23 | "Golden Stmt." | Statement of Undisputed Material Facts Submitted by Defendant Golden National Mortgage Banking Corporation Pursuant to Local Rule 56.1 [relied upon by other defendants, *see* DE 30 at 1] |
| 23 | "Medina Dec." | Declaration of Helen Medina, dated September 30, 2004, including Exhibits A-CC |
| 23 | "Golden Memo." | Memorandum of Points and Authorities in Support of an Order Pursuant to Federal Rules of Civil Procedure 9(b) and 56 Dismissing All Claims Against Golden National Mortgage Banking Corporation |
| 30 | "Playa Notice" | Notice of Cross-Motion For Summary Judgment and to Dismiss Plaintiff's Complaint |
| 30 | "Playa Aff." | Attorneys' Affirmation in Support of Cross-Motion For Summary Judgment, including Exhibits A-I |
| 35 | "Mercado Playa Opp." | Plaintiff's Memorandum of Law Opposing the Cross-Motion of Defendants Playa Realty Corporation; Litton Loan Servicing, LP; and Chase Manhattan Bank For Summary Judgment |
| 52 | "Mercado Golden Opp." | Plaintiff's Memorandum of Law [plaintiff's opposition, apparently to Golden's motion, dated November 4, 2004, but not filed until June 17, 2005; and then filed again on June 20, 2005, as part of DE 54] |

| 51 | "Mercado Aff." | Plaintiff's Affidavit Opposing Motion For Summary Judgment, including Exhibits A-M [the same document was previously filed, without the attached exhibits, as DE 33, and again as DE 50; and then later filed with different accompanying documents as part of DE 52 and DE 54] |
|----|----------------|--------------------------------------------------------------------------------------|
| 52 | "Maynard Golden Aff." | Affirmation Opposing Motion For Summary Judgment [affirmation by plaintiff's counsel, responding to Golden's motion, dated November 1, 2004, but not filed until June 17, 2005] |
| 53 | "Maynard Playa Aff." | Affirmation In Reply To Defendants' Opposition [sic], including Exhibits N-O [affirmation by plaintiff's counsel, responding to the cross-motion by Playa, Litton, and Chase, dated December 18, 2004, but not filed until June 20, 2005] |
| 36 | "Golden Reply" | Reply Memorandum of Points and Authorities in Support of an Order Pursuant to Federal Rules of Civil Procedure 9(b) and 56 Dismissing All Claims Against Golden National Mortgage Banking Corporation |
| 37 | "Playa Reply" | Defendants Playa Realty Corporation's, Litton Loan Servicing's and Chase Manhattan Bank's Memorandum Of Law In Reply To Plaintiff's Opposition To Cross-Motion |

As the preceding list indicates, the submissions in regard to the pending motions have not been a model of clarity, nor have all parties fully conformed to local rules regarding the submission of motion papers. The cross-motion submitted by Playa, Litton, and Chase was not supported by a memorandum of law, in violation of Local Rule 7.1, and instead improperly relied on an argumentative affirmation by two attorneys. Mercado's submissions, in addition to being untimely filed (if not untimely served) and filed in an extremely confusing fashion, likewise make no attempt to comply with Local Rule 56.1.[1] Moreover, Mercado has improperly

---

[1] Mercado's counsel purports to controvert paragraphs 6, 10, 16, and 17 of Golden's Rule 56.1 statement. Maynard Golden Aff. ¶¶ 3-8. Although that is technically insufficient, *see* Local Civil Rule 56.1(c), I will give Mercado the benefit of reading her submission as liberally as I would that of an unrepresented litigant. I therefore assume that Mercado has effectively sought

submitted what amounts to a sur-reply by her attorney. Nevertheless, to avoid letting the instant matter get bogged down in collateral litigation over technical compliance with applicable procedural rules, I have considered all of the parties' various submissions and now address the motions on their merits.

      B.      <u>Factual And Procedural Background</u>

The parties submissions establish the following undisputed facts. On October 28, 1999, Mercado entered into a contract of sale to purchase a single family residence in Bayshore, New York. In conjunction with the purchase of her house, Mercado retained Playa to serve as her mortgage broker by entering into a brokerage agreement. Pursuant to this agreement Playa was to serve as her exclusive agent in obtaining a mortgage and provide her assistance in the mortgage application process. Playa counseled Mercado as to her loan application and assisted her in obtaining a mortgage from Golden. Golden Stmt. ¶¶ 1, 4, 5; Medina Dec. Ex. F (Brokerage Agreement).

On December 14, 1999, Golden provided Mercado with a final written mortgage commitment which provided Mercado with a 30-year subprime mortgage in the sum of $103,790.00 at a "locked in" annual interest rate of 9.25%. JPTO at 4-5. In determining whether to offer Mercado a loan, two credit reports were used; one was generated for Playa by Automated Information Services, Inc. ("AIS") on November 4, 1999 and the second was generated for Golden by Equifax on November 19, 1999. Golden Stmt. ¶ 15, Medina Dec. Exs. K, N.

---

to controvert the facts described as undisputed in the cited paragraphs of Golden's Rule 56.1 statement. All other statements in Golden's Rule 56.1 statement are admitted. Also deemed undisputed are the facts stipulated by the parties in their joint pretrial order ("JPTO"). DE 47 at 3-6.

Mercado closed on the house on December 17, 1999. Golden Stmt. ¶ 15. Golden did not

provide Mercado with a package of closing documents at the closing. JPTO at 5. However,

Golden claims it mailed all necessary documents, including a "HUD informational booklet," to

Mercado prior to the closing. Golden Stmt. ¶ 10. Mercado contends that she received an

envelope from Golden containing some documents, but that the envelope lacked a copy of the

"HUD informational booklet." Maynard Playa Aff. ¶ 6.[2]

On July 31, 2000, Golden transferred the servicing of Mercado's loan to Litton. JPTO at

5. On March 29, 2000, Golden assigned Mercado's mortgage to Chase as trustee. Golden Stmt.

¶ 17, Maynard Golden Aff. ¶ 8. In August 2001, Mercado defaulted on her mortgage. *See*

Medina Dec. Ex.Y at 2. On March 12, 2002, Chase filed an action in the Supreme Court of New

York to foreclose on Mercado's residence. During the state foreclosure action, Mercado filed a

cross-motion for summary judgment in which she sought both to have Chase's mortgage

rescinded and to recover damages for Chase's alleged predatory lending. Medina Dec. Exs. BB

and Y. On March 20, 2004, a state supreme court judge granted Chase's motion for summary

judgment, denied Mercado's cross-motion for summary judgment, and permitted Chase to

foreclose on Mercado's house. Medina Dec. Ex. Y. Mercado attempted to implead Playa into

---

[2] The parties have submitted a document that bears a signature reading "Jenny Mercado 11/19/99" and that reads, in part, "I acknowledge receipt of ... [t]he special information booklet required by the Real Estate Settlement Procedures Act," Playa Aff. Ex. E, which the parties seem to understand to be a reference to the HUD informational booklet mentioned above. To my untrained eye, the signature on that document looks very much like the signature by which Mercado verified her Complaint, DE 1 ("Complaint") at 15, and also like the signature she affixed to her affidavit of November 3, 2004, Mercado Aff. at 5. Nevertheless, Mercado apparently denies having signed the acknowledgment, at least in the form presented by the defendants. *See* Mercado Aff. ¶ 19. Accordingly, I treat the matter as disputed. For reasons explained below, the factual dispute does not preclude summary judgment.

the foreclosure proceeding as a third party defendant. Medina Dec. Ex. BB. The state court judge denied this request because "[t]he proposed claim against the mortgage broker raises different questions of law and fact than the foreclosure action which is concerned with default in payment." Medina Dec. Ex. Y. Mercado filed a notice of appeal on May 13, 2003. Medina Dec. Ex. CC. She withdrew that appeal on November 12, 2003. Medina Dec. Ex. DD.

On July 13, 2003, while her state court appeal was still pending, Mercado commenced the instant action by filing her Complaint. In it, she alleged that Playa and Golden failed to provide a "HUD Special Information Booklet, steered Mercado to a loan at a higher rate and fees .... [and] engaged in unlawful 'equity stripping', which substantially and inexorably led to defendant Chase's obtaining a judgment of foreclosure against" Mercado. Complaint ¶ 31. Mercado also alleged that Litton and Chase engaged in equity stripping. Complaint ¶¶ 35, 37.

The defendants' actions, Mercado claimed, violated quite a few federal and state laws: the Real Estate Procedures Act, 12 U.S.C. § 2601 *et seq*. ("RESPA"); the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) ("FTCA"); the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"); the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"); the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"); and Section 349 of the New York General Business Law ("NYGBL"). Complaint ¶¶ 31, 35, 37.[3] Mercado also asserted common claims: she averred that Playa breached its duty of care as her mortgage

---

[3]  The preceding summary masks the fact that Mercado and her counsel seem less than familiar with the federal statutes on which they seek to rely. They do not specify any provision of RESPA that the defendants allegedly violated; they cite a completely inapposite statute (15 U.S.C. § 615(a), which is part of the Reconstruction Finance Corporation Act of 1932) as the violated portion of the FCRA; and they cite a definitional provision of TILA (15 U.S.C. § 1602) as the basis of that part of the Complaint. Here again I give Mercado's submissions the liberal reading usually reserved for *pro se* litigants in an effort to reach the merits of the pending motions.

broker, and that Playa and Golden defrauded her. Complaint ¶¶ 29, 33. As a result of the defendants' asserted misconduct, Mercado claimed entitlement to an unspecified amount of money damages; she did not request recovery of the title to her former home or other equitable relief. *See* Complaint at 14. The defendants filed answers in which they denied Mercado's substantive allegations and asserted affirmative defenses. DE 7, DE 10, DE 11.

## II. <u>Discussion</u>

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quoting Fed. R. Civ. P. 56(c)). In determining whether to grant summary judgment, a court is confined to issue-finding, not issue resolution. *Rasmussen v. Sigma Corp. of America*, 27 F. Supp.2d 388, 391 (E.D.N.Y. 1998) (citations omitted). The court does not "'weigh the evidence and resolve factual issues'" but rather "'determine[s] as a threshold matter whether there are genuine unresolved issues of material fact to be tried.'" *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989)); *see* Fed. R. Civ. P. 56(c). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" *Id*. In assessing the evidence, "[a]ll factual inferences are to be resolved in favor of the non-movant." *Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994).

Golden asserts that all of Mercado's claims against it are barred by the *Rooker-Feldman* doctrine or alternatively *res judicata*. Golden Memo. at 6-11. Even if not barred by those doctrines, Golden argues that some of Mercado's federal claims are based on statutes that provide for no private cause of action, that the remainder are time-barred, and that Mercado has failed to state a cognizable fraud claim. Golden Memo. at 11-22. The remaining defendants adopt Golden's arguments. *See generally* Playa Notice.

I address each argument in turn below. Before doing so, I note that Mercado has withdrawn her Fourth Cause of Action, set forth in paragraphs 34-35 of the Complaint. *See* Mercado Playa Opp. at 14; JPTO at 7 ("Plaintiff has withdrawn her Fourth Cause of Action which, therefore, is not to be tried."). Although Mercado has stated her intent to withdraw that claim, which is her only one against defendant Litton, she has not filed a stipulation of discontinuance as to that defendant pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. Accordingly, I grant Litton's motion for summary judgment without further analysis, on the ground that it is unopposed (although I note in passing that even if opposed, I would grant it for the same reasons warranting summary judgment in favor or Playa and Chase).

A.      *Rooker-Feldman* Doctrine

Golden argues that this court lacks subject matter jurisdiction over Mercado's claims under the *Rooker-Feldman* doctrine, which bars lower federal courts from reviewing any claim that would result in a reversal or modification of a state court judgment. Golden Memo. at 7 (citing *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998)). Golden argues that the *Rooker-Feldman* doctrine prevents a plaintiff from initiating "a federal court action that: (1) directly challenges a state court holding or decision; or (2) indirectly challenges a state court

holding or decision by raising claims in federal court that are 'inextricably intertwined' with the state court judgment, even if the claim was not raised in the state court."  *Id*. (citing *Dockery v. Cullen & Dykman*, 90 F. Supp.2d 233, 236 (E.D.N.Y. 2000)).  Golden claims that even though Mercado did not directly assert her claims against it during the state court proceedings, her claims against it are barred under this doctrine because it would undermine the state court's ruling that Chase had a valid mortgage.

The Supreme Court has recently clarified that application of the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-22 (2005). As the Court explained, the doctrine reflects the fact that lower federal courts, unlike the Supreme Court, generally lack authority to review state court judgments.  In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), a party who lost in state court filed suit in a federal court alleging that the adverse state court judgment violated the constitution and seeking to have the state court judgment declared null and void.  The Supreme Court held that since the federal suit essentially sought a review of the state court action it constituted appellate review which was beyond the jurisdiction of the lower federal courts.  *See Exxon Mobil*, 125 S. Ct. at 1522.

 Mercado's claims against Golden are not an attempt to overturn an adverse state court judgment obtained by Golden against Mercado.  Even assuming Golden is correct in its assertion that some of Mercado's allegations against it raise issues that challenge or are inextricably intertwined with those considered by the state court, that fact does not defeat subject matter

jurisdiction. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case in which he was a party ... then there is jurisdiction and state law determines whether the defendant prevails under the principles of preclusion." *Exxon Mobil*, 125 S. Ct. at 1527. Therefore, the *Rooker-Feldman* doctrine does not bar Mercado from bringing her action against Golden in federal court.

The same reasoning applies with respect to Mercado's claims against Playa. The state court judge denied impleader on the grounds that Mercado's claims against Playa raised "different questions of law and fact than the foreclosure action." *See* Medina Dec. Ex. Y. Because no state court judgment was ever entered concerning Playa, Mercado's claims against Playa are not barred by the *Rooker-Feldman* doctrine.

On the other hand, Mercado's claims against Chase are barred. Mercado lost in her state court case against Chase, and Chase obtained a judgment that permitted it to foreclose on her house. She is now bringing a suit against Chase, in which she alleges that Chase's predatory lending practices lead to her defaulting on the loan. Complaint ¶ 25. She also lists the loss of her house through Chase's foreclosure as one of the injuries she suffered as a result of the predatory lending. Complaint ¶¶ 26-27. This is precisely the type of action that the Supreme Court in *Exxon Mobil* confirmed is subject to application of the *Rooker-Feldman* doctrine: the loser in a state court proceeding (Mercado) is bringing a suit against the winner in that proceeding (Chase), claiming that she was injured by the state court judgment (the loss of her house through foreclosure). Therefore, this court lacks subject matter jurisdiction to consider Mercado's claims against Chase.

B.    _Res Judicata_

Golden claims it is entitled to summary judgment because Mercado either raised or could have raised all of her claims in the state court action, and New York's *res judicata* rules prevent these claims from being relitigated in federal court.   Golden Memo. at 10.  Mercado argues that *res judicata* does not bar her claims because the state court action dealt solely with whether Mercado had defaulted in her mortgage payments.  Mercado Golden Opp. at 6.

The foreclosure action against Mercado occurred in New York; therefore, New York's *res judicata* doctrine governs. *Beckford v. Citibank, N.A.*, 2000 WL 1585684, *3 (S.D.N.Y. Oct. 24, 2000) (citing *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466, 482, 483 n.24 (1982)). Under New York law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Boguslavsky v. S. Richmond Sec., Inc.*, 225 F.3d 127, 130 (2d Cir. 2000) (quotation omitted), *see also Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir. 1992) ("Claim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.") (citations omitted).   The doctrine applies specifically to, among other matters, defenses to a foreclosure action.  *Beckford*, 2000 WL 1585684, at *3 (citation omitted).  Further, the related theory of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same." *Ferris v. Cuevas*, 118 F.3d 122, 126 n.4 (2d Cir. 1997) (internal quotations and citations omitted).

Golden and Playa were not parties to the foreclosure action in state court; although Mercado unsuccessfully attempted to implead Playa. *See* Medina Dec. Exs. BB and Y. No claims or defenses were or could have been advanced by Mercado against Golden or Playa because they were not parties to the foreclosure action. Therefore, claim preclusion does not bar Mercado's instant claims against Golden or Playa.

Collateral estoppel prevents Mercado from relitigating any issues of fact or law which were decided by the state court in the foreclosure action. In order for collateral estoppel to apply, Mercado must have "been afforded a full and fair opportunity" to participate in the foreclosure action in state court and the issues raised in the foreclosure action must be identical to the ones Mercado is now raising. *See Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485 (1979) (citation omitted). It is undisputed that Mercado had a full and fair opportunity to participate in the foreclosure action, and she availed herself of that opportunity by filing an answer and a motion for summary judgment. The foreclosure action dealt with whether Mercado defaulted on her payments to Chase. Medina Dec. Ex. Y at 3. In her answer to Chase's complaint, Mercado raised four affirmative defense and one counterclaim. Medina Dec. Ex. AA. The issues raised by Mercado in her affirmative defenses and counterclaim are distinct from the issues she is currently raising in federal court. Mercado's counsel unsuccessfully attempted to raise the issue of alleged RESPA and TILA violations in the state court proceeding. Medina Dec. Ex. BB, Affirmation Replying to Plaintiff's Affirmation in Opposition. The court refused to consider her arguments concerning RESPA and TILA, because she made them in a procedurally improper reply. Medina Dec. Ex. Y at 1. The state court never reached a decision on the issues

concerning the alleged violations of RESPA and TILA; therefore, collateral estoppel does not prevent her from litigating these issues in the instant action.

Chase was a party to the foreclosure action and successfully won a judgment permitting foreclosure. In her motion for summary judgment, Mercado moved for sanctions from the court which would have rescinded the loan, awarded her double the amount she paid in interest to Chase, and consequential damages for damage to her credit rating. Medina Dec. Ex. BB, Notice of Motion at 1. Mercado seeks these sanctions because she alleges Chase "vicariously engaged n predatory lending." *Id.* The state court found in favor of Chase and issued a judgment of foreclosure. Medina Dec. Ex. Y.

Mercado's fifth cause of action against Chase states that Chase "engaged in unlawful 'equity stripping' when ... it imposed an approximately thirty-five thousandths of one percent (0.035%), for 'additional insurance.'" Complaint ¶ 37. Given the convoluted nature of Mercado's state court pleadings and briefs, her federal court pleadings, and her briefing papers for the instant motion, it is difficult to determine the exact nature of plaintiff's allegations; however, it appears that all of the claims being raised in Mercado's fifth cause of action could and should have been raised as defenses to the foreclosure action. In support of her position on the summary judgment motion in the state court foreclosure proceeding, Mercado's counsel, who is also representing her in the instant action, filed a reply affirmation dated October 27, 2003. Medina Dec. Ex. BB. In this affirmation, Mercado's counsel included language that is almost identical to the language contained in the instant Complaint; it is in this affirmation that Mercado's counsel provides support for the allegations of vicarious predatory lending made in the notice of motion. Although the court rejected this affirmation for being procedurally improper, the affirmation

shows that Mercado intended her motion for summary judgment against Chase, which the state court permitted her to bring as a cross-motion and denied on the merits, to raise the claims which she is now attempting to litigate in the instant action.

To the extent that Mercado is raising new claims in her federal action, they could have been asserted during the foreclosure action as counterclaims against Chase. Moreover, the relief Mercado now seeks is inconsistent with the state court's ruling in the foreclosure action. Under New York Law, *res judicata* bars a party from asserting a claim that could have been a counterclaim in a prior action, if the relief sought is inconsistent with the prior court's ruling. *Henry Modell and Co. v. Minister, Elders, and Deacons of the Reformed Protestant Dutch Church*, 68 N.Y.2d 456, 461 (1986). Accordingly, under New York law, Mercado's claims against Chase are barred by the doctrine of *res judicata*, and Chase is entitled to summary judgment in its favor on that ground alone.

C.    The First Cause of Action:  Breach of Fiduciary Duty

Pursuant to the brokerage agreement, Mercado authorized Playa to  "act as my exclusive agent for the purposes of obtaining a mortgage commitment form [sic] a commercial lender ...." Medina Dec. Ex. F (emphasis omitted). Mercado's vaguely stated first claim appears to be that Playa breached the fiduciary duty it owed Mercado as her agent by failing to inform her of the various mortgage packages available to her and by not securing the best one for her. *See* Complaint ¶¶ 17-18. Playa argues that this claim for money damages based on alleged breach of fiduciary duty is time-barred under the applicable three-year limitations period. *See* Playa Aff. ¶ 20 (citing *Adams Book Co. v. Ney*, 2002 WL 31946713 (E.D.N.Y. Dec. 3, 2002)). I agree.

14

Under New York law, claims seeking money damages for breach of a fiduciary relationship are considered injuries to property and are governed by the three year statute of limitations contained in C.P.L.R. § 214(4). *Adams Book*, 2002 WL 31946713, at *4 (citing *Cooper v. Parsky*, 140 F.3d 433, 441 (2d Cir. 1998)). In contrast, claims for breach of fiduciary duty that seek equitable relief are governed by a six year statute of limitations. *Loengard v. Santa Fe Indus., Inc.*, 70 N.Y.2d 262, 266-67 (1987) (answering a certified question from the Second Circuit Court of Appeals). As noted above, Mercado's prayer for relief seeks money damages but makes no request for equitable relief. Accordingly, her claim is subject to the three-year limitation period.

Mercado retained Playa as her agent for the express purpose of obtaining a commercial loan; once Mercado closed on her loan, the agency relationship ended, and with it, Playa's fiduciary duty. The loan closed on December 17, 1999, Golden Stmt. ¶ 12, and therefore Mercado cannot complain about any breach of fiduciary duty thereafter. As a result, Mercado would have had to file any complaint seeking monetary redress for Playa's alleged breach of fiduciary duty no later than December 17, 2002. In the event, however, Mercado did not file the instant complaint until July 14, 2003. Her first cause of action against Playa is therefore time-barred, and Playa is entitled to summary judgment on that claim.

In her memorandum of law opposing Golden's motion, Mercado argues that "[t]he instant case also sounds in contract" and that the relevant limitations period under New York law is therefore six years. Mercado Golden Opp. at 11 (citing *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506 (S.D.N.Y. 1997)). Although that argument was made with respect to a different cause of action than the one at issue here (and was flawed in that context in any event),

Mercado quotes it in her opposition to Playa's cross-motion with respect to the first cause of action.  Mercado Playa Opp. at 8-9.  She does so not to claim that a different limitations period applies to that cause of action, but instead as the basis for requesting permission to amend her complaint to transform the cause of action from its current form into one that pleads a breach of contract.  *Id*. at 9.  That request appears only in the memorandum of law; Mercado has not filed a motion seeking leave to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure, nor did her counsel raise the issue orally at any of the conferences before me in this case, nor did she preserve the request in the subsequently filed JPTO.  Mercado has also failed to provide any concrete description of the amendment she contemplates, much less file a proposed amended complaint.  She does not provide a legal or factual basis for why her request should be granted despite her having waited until after the close of discovery.

Notwithstanding the multiple procedural irregularities, I will deem Mercado's request to be a motion for leave to amend the complaint pursuant to Rule 15(a).  When a party seeks such relief, it should be granted absent such reasons to deny the application as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party [or] futility of amendment ...."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Under this standard, there is at least one sufficient reason to deny leave to amend.  Mercado does not allege diversity between herself and the defendants; therefore, any new contract claim could only be added pursuant to the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  However, for reasons explained elsewhere in this memorandum, all of Mercado's other claims fail to survive the defendants' respective motions for summary judgment.

16

As a result, the amended complaint that Mercado contemplates could assert only the state law contract claim against non-diverse defendants. This federal court would lack subject matter jurisdiction over such a complaint, thus rendering the requested amendment futile. Mercado's request for leave to amend must therefore be denied.

        D.      The Second and Fifth Causes of Action:  Statutory Violations

Mercado's second cause of action is brought against Playa and Golden and seeks damages for violations of RESPA, FTCA, FRCA, TILA, HOEPA, and NYGBL § 349; her fifth cause of action asserts a similar theory against Chase.  Complaint ¶¶ 31, 37.  The defendants argue that no private right of action exists for violations of RESPA and FTCA and that all of Mercado's other statutory claims are time barred.  As discussed below, I agree.

        1.      RESPA and FTCA – No Private Right of Action

Although Mercado does not identify the provision of RESPA that she believes the defendants violated, she does complain that Golden failed to provide her with a HUD informational booklet.  Section 5 of RESPA, 12 U.S.C. § 2604, requires lenders to distribute informational booklets to consumers, and I assume that it is that requirement at issue here.  That provision does not explicitly authorize a private right of action, and the Second Circuit has not ruled on whether it creates an implied private right of action.  All other courts that have considered this question have refused to find an implied private right of action under the provision.  *See Collins v. FMHA-USDA*, 105 F.3d 1366 (11th Cir.), *cert. denied*, 521 U.S. 1127 (1997); *Campbell v. Machias Sav. Bank*, 865 F. Supp. 26, 31-32 (D. Me. 1994); *Brophy v. Chase Manhattan Mortgage Co.*, 947 F. Supp. 879, 881-83 (E.D. Pa. 1996); *Mentecki v. Saxon Mortgage, Inc.*, 1997 WL 45088 (E.D. Va. Jan. 10, 1997).  In addition, when considering other

sections of RESPA that also fail explicitly to authorize private causes of actions, the majority of courts have refused to recognize any implied right. *See Allison v. Liberty Sav.,* 695 F.2d 1086 (7th Cir. 1982) (no implied private right of action for 12 U.S.C. § 2609); *State of Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1300-02 (5th Cir. 1995) (same); *Michels v. Resolution Trust Corp.*, 1994 WL 242162 (D. Minn. Apr. 13, 1994) (same); *Bergkamp v. New York Guardian Mortgagee Corp.*, 667 F. Supp. 719, 723 (D. Mont. 1987) (same); *Bloom v. Martin*, 865 F. Supp. 1377, 1383-85 (N.D. Cal. 1994) (no implied private right of action for 12 U.S.C. § 2603); *but see Vega v. First Fed. Sav. & Loan Ass'n,* 622 F.2d 918, 25 n.8 (6th Cir. 1980) (finding in a footnote that an implied private right of action exists under 12 U.S.C. §§ 2609 and 2610).

The FTCA likewise fails to authorize a private right of action. "[T]he provisions of the [FTCA] may be enforced only by the Federal Trade Commission." *Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 499 F.2d 232, 237 (2d Cir. 1974). To the extent that Mercado complains of a violation of the statute, she does so as a consumer. But as the Second Circuit has noted, "[n]owhere does the [FTCA] bestow upon ... consumers standing to enforce its provisions." *Id*. (citing *Moore v. New York Cotton Exch.*, 270 U.S. 593, 603 (1925)).

Mercado does not defend the proposition that either statute allows her to sue. Mercado Golden Opp. at 8-9. Instead, she states that in alleging violation of the two acts, she did not intend to set up an independent cause of action "but, merely to corroborate the predatory behavior." *Id*. at 9. Specifically, she argues that the defendants' alleged failure to provide the HUD booklet as required by Section 5 of RESPA constitutes unlawful behavior sufficient to permit her to bring a claim under NYGBL § 349 and 15 U.S.C. §§ 1639 and 1640. The distinction is a fine one, and smacks more of a rationalization for a poorly conceived complaint

than an explanation for an infelicitously worded one, particularly with respect to the FTCA (as highlighted by the JPTO, in which Mercado cites the FCTA as a basis for jurisdiction and the purported violation of the statute as a claim to be tried). Regardless, the parties agree that Mercado may not rely on either statute alone as the basis for a claim against any defendant.

### 2. The Statute Of Limitations Under The FCRA

All civil actions brought under the FCRA must be filed "within two years from the date on which liability arises, except that where a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery by the individual of the misrepresentation." 15 U.S.C. § 1681p (2003).[4] Golden argues that Mercado's claim under the FCRA is governed by the standard two year statute of limitation. Golden Memo. at 16. Mercado does not dispute that more than two years have passed since the date on which the defendants' allegedly became liable to her under FCRA; instead, she argues that because the exception for willful misrepresentation applies, the two year statute of limitations dates from when she discovered the misrepresentation. Mercado Golden Opp. at 11-13. Mercado does not state when she discovered the alleged misrepresentation by Playa, although I will assume she would claim that it was some time after July 14, 2001 (*i.e.*, less than two years before she filed her Complaint).

---

[4] Section 156 of the Fair and Accurate Credit Transactions Act of 2003 changed the limitations period for claims brought under FCRA, but the change took effect on March 31, 2004 – after Mercado filed the instant Complaint. *See* 12 C.F.R. § 222.1(c)(2)(ii). Accordingly, the two-year period applies here.

Due to the convoluted nature of Mercado's pleadings, it is difficult to decipher the exact nature of her FCRA claim. In her opposition to Golden's motion, Mercado describes it thus:

> According to the movant, plaintiff's median credit score was 636, (on a scale of 250 to 900), where the upper limit for sub-prime loans was 620. Subprime loans are provided to applicant with poor credit. Nevertheless, although plaintiff's score was above the grade for a sub-prime loan, the movant determined that "(plaintiff's) credit score was not substantial," adversely acted on it and failed to notify plaintiff as required by the statute. Indeed, as averred in the complaint, the movant and co-defendant mortgage broker jointly and severally misled plaintiff, by telling her that she had a good credit record, then took actions as they would have for a bad record. It was a material and willful misrepresentation, under the statute, that inured to plaintiff's detriment, when the two co-defendants steered her to the movant's unconventional, onerous loan. Then they exacerbated the deleterious effects of the loan by providing one that exceeded the risk to the movant, which enhanced their fees, at plaintiff's expense, an indicator that the loan was predatory.

Mercado Golden Opp. at 12-13 (emphasis omitted). Mercado is claiming that Golden and Playa jointly and severally violated the FCRA by failing to send Mercado a notice that they were taking an adverse action against her by providing her with a subprime loan rather than a prime loan. Mercado claims that her FCRA claim is subject to a discovery rule because Playa willfully misrepresented her credit record, by telling her that she had a "good" credit score."

The willfulness exception to the statute of limitations applies only to material misrepresentations of disclosures that are required under the FCRA. *See Saraiva v. Citigroup, Inc.*, 2002 WL 227070, *3 (S.D.N.Y. Feb. 13, 2002) (stating that "the limitations exception is only triggered if the defendants violated a disclosure requirement in the FCRA"). Even assuming that Playa's statement was a willful misrepresentation, Mercado's claim would not be timely unless the statement was also a disclosure required under the FCRA. Mercado fails to provide any basis for me to make such a finding.

Playa was not required to disclose to Mercado its opinion of her credit score. Playa obtained Mercado's credit report from AIS, which is a credit reporting agency under the FCRA. *See* 15 U.S.C. § 1681a(f). One who obtains a credit report from a credit reporting agency – a user of credit reports – is only required to make disclosures to consumers in limited situations and there is no general requirement that a user of credit reports must disclose to the consumer that a report was obtained or the contents of that report. *See Saraiva*, 2002 WL 227070, at *3. Because Playa was not required to make the disclosure which Mercado claims was a misrepresentation, the normal statute of limitations contained in § 1681p applies and Mercado's claims under the FCRA are time barred.

### 3. The Statute Of Limitations Under The TILA And The HOEPA

Under both the TILA and the HOEPA, a plaintiff must sue within one year of the claimed statutory violation. 15. U.S.C. § 1640(e). Mercado filed her Complaint more than three years after entering into her loan with Golden and is therefore time-barred from asserting claims under the statutes. Mercado admits as much and says she is withdrawing the claims, Mercado Golden Opp. at 11, but she has thus far failed to file a stipulation accomplishing that withdrawal. Accordingly, summary judgment as to any claims based on the two statutes is appropriate.

### 4. The Statute Of Limitations Under The New York Statute

Mercado's claims under NYGBL § 349 are subject to a three-year statute of limitations. *See Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris, Inc.*, 178 F. Supp.2d 198, 271 (E.D.N.Y. 2001). Mercado's alleged injury occured before the closing on her mortgage on December 17, 1999, and her Complaint was filed more than three years later. Accordingly, the state statutory claims are time-barred. Mercado seeks to escape that result by contending that she

is entitled to a six-year limitations period because her case "sounds in contract." Mercado Golden Opp. at 11 (citing *Dornberger*). She is mistaken as to both the holding of the case she relies on and its relevance to this case.

In *Dornberger*, the court recognized that current case law did not provide a clear answer for which statute of limitation applied to NYGBL § 349. *Dornberger*, 961 F. Supp. at 548-49. The *Dornberger* court considered three alternative statute of limitations that other federal courts had applied to the statute: (1) the three year statute of limitations period under C.P.L.R. § 214(2), which applies to all statutorily created causes of action, *Domon v. Warsitz*, 1993 WL 152079, at *5 (W.D.N.Y. Apr. 26, 1993); (2) the three year statute of limitations period under C.P.L.R. § 214(4), which applies to claims for injury to property, *Construction Tech., Inc. v. Lockformer Co.*, 704 F. Supp. 1212, 1223 (S.D.N.Y. 1989); or (3) the six year statute of limitations period under C.P.L.R. § 213(8), which applies to fraud claims, *Endiciones Quiroga v. Falls River Music, Inc.*, 1995 WL 103842, at *7 (S.D.N.Y. Mar. 7, 1995). The court adopted the rationale of *Endiciones* and applied the six year statute of limitations for fraud claims. *Dornberger*, 961 F. Supp. at 548-49.

Four years later, the New York Court of Appeals explicitly rejected the use of the six-year fraud statute of limitations for claims brought under NYGBL § 349. *Gaidon v. Guardian Life Ins. Co. of Am.,* 96 N.Y.2d 201, 208-09 (2001). In *Gaidon*, the plaintiffs argued that NYGBL § 349(h), which permits private suits under NYGBL § 349, "merely codifies and affords new remedies for what in essence is a common-law fraud claim[,]" and only deviates from common-law fraud by relaxing scienter. *Id*. at 208. The court rejected that argument and held that the statute is remedial, and designed to encompass "a far greater range of claims that were never

legally cognizable before its enactment." *Id.* at 209. "Although a person's action may at once implicate both, General Business Law § 349 contemplates actionable *conduct that does not necessarily rise to the level of fraud. In contrast to common law fraud*, General Business Law § 349 is a creature of statute based on broad consumer-protection concerns .... Although General Business Law § 349 claims have been aptly characterized as similar to fraud claims ... *they are critically different*." *Id.* (emphasis in original) (quotation omitted). The New York Court of Appeals applies C.P.L.R. § 214(2) to all statutory claims "which would not exist but for the statute." *Id.* (quoting *Matter of Motor Vehicle Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214, 220-21 (1996)) (emphasis omitted). Because the court found NYGBL § 349(h) to authorize a claim that did not exist under pre-existing law, suits brought under the state statute are subject to the three year statute of limitations period provided in C.P.L.R. § 214(2). Accordingly, Mercado's claims under the New York statute are subject to the three-year limitations period, and are time-barred.

      E.      The Third Cause of Action:  Common Law Fraud

      Mercado's third cause of action asserts a common-law fraud claim against both Playa and Golden. Complaint ¶¶ 32-33. A claim for fraud "may arise when one misrepresents a material fact, knowing it is false, which another relies on to its injury." *Twenty First Century L.P.I. v. LaBianca*, 19 F. Supp.2d 35, 39 (E.D.N.Y. 1998) (citing *Gordon & Co. v. Ross*, 84 F.3d 542, 544 (2d Cir. 1996)). The elements for a claim of fraud under New York law are:  (1) a false misrepresentation of fact; (2) with scienter (*i.e.*, deliberately or knowingly); (3) with an intent that a party will act or refrain from acting in reliance on the misrepresentation; and (4) that the party suffered pecuniary loss as a result of the reliance. *Id.* (citing *First City Nat'l Bank & Trust*

*Co. v. FDIC*, 730 F. Supp. 501, 513-14 (E.D.N.Y. 1990)).  Such a claim must be stated with particularity.  Fed. R. Civ. P. 9(b).

To satisfy the requirements of Rule 9(b), "the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made and identify those responsible for the statements." *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992) (quotation omitted).  "A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one." *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972).  Rule 9(b)'s purpose is to ensure that the plaintiff has a reasonable factual basis to believe that fraud has occurred.

Golden and Playa claim that this cause of action should be dismissed because Mercado makes no effort to particularize the misrepresentation, fails to identify which defendant made the misrepresentation, and fails to give the date, the speaker, or the subject of the misrepresentation in her complaint.  Mercado's third cause of action relies on the following allegation:

> Similarly, in failing to provide plaintiff an HUD Special Information Booklet, failing to inform plaintiff of the types of loans that were available to her, and steering plaintiff's mortgage application to the defendant [Golden's] 8210 program, defendants [Playa] and/or [Golden] made a material misrepresentation, that misled plaintiff, such that she acted upon it to her financial detriment.  The acts of defendants [Playa] and/or [Golden] violated the Common Law on fraud.

Complaint ¶ 33 (quotations and footnotes omitted).

Mercado's complaint fails to satisfy the requirements of Rule 9(b).  She fails to adequately identify what statements were made, who made them, or what their content was. Mercado fails to even specify which defendant made the misrepresentations to her.  Even under a

liberal interpretation of the Rule, plaintiffs are required to state at a minimum: "the time, place, content of false misrepresentation, facts misrepresented, identity of maker of the misrepresentation and what was obtained as consequence of fraud." *Kravetz v. Brukenfeld*, 591 F. Supp. 1383 (S.D.N.Y. 1984) (stating that Rule 9(b) must be read in conjunction with the liberal pleading requirements of Fed. R. Civ. P. 8(b)). Mercado's claim fails to meet these requirements and makes only a conclusory allegation that either Golden or Playa made misstatements.

Mercado's cause of action for fraud thus fails to state a claim. Amending the pleading would be futile, as the result would be an amended complaint over which this court would lack subject matter jurisdiction. Moreover, Mercado has cited no non-conclusory evidence that creates a dispute of material fact as to whether she was eligible for any loan other than the one she got. For all of these reasons, Mercado's fraud claim cannot withstand a motion for summary judgment and should not be resuscitated in an amended complaint.

III.    Conclusion

For the reasons stated above, Golden's motion for summary judgment is GRANTED in its entirety. The cross-motion for summary judgment by defendants Playa, Chase, and Litton is also GRANTED in its entirety. Mercado's request to amend her complaint is DENIED. The Clerk is directed to enter judgment in favor of the defendants and against Mercado and to close the case.

**SO ORDERED.**

Dated:  Central Islip, New York
        July 7, 2005

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge
